# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KARAMELION LLC,

          Plaintiff

      v.

FIBAR USA LLC,

          Defendant

Case No. 1:19-cv-06330

Honorable Sharon Johnson Coleman

**PATENT CASE**

**Jury Trial Demanded**

## PLAINTIFF KARAMELION LLC'S OPPOSITION TO DEFENDANT
## FIBAR USA LLC'S MOTION TO DISMISS UNDER RULE 12(b)(6)

David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

*Attorneys for Plaintiff Karamelion LLC*

March 13, 2020

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

TABLE OF EXHIBITS .............................................................................................. vi

I.    SUMMARY OF THE ARGUMENT .............................................................. 1

II.   CONCISE STATEMENT OF THE FACTS ................................................... 2

    A.    Problems Existed with Prior Art Distributed Appliance Systems ...........................2

    B.    The Claims of the Patents-in-Suit Are Directed to an Improved Apparatus
    for Use in Monitoring and Controlling Distributed Appliance Systems ................3

    C.    The Acceptance of the Oaths/Declarations by the Examiner During the
    Prosecution Histories of the Patents-in-Suit ............................................................4

III.  STATEMENT OF THE LAW ........................................................................ 5

    A.    Standards for a Motion to Dismiss and for Pleading Infringement .......................5

    B.    Judicial Notice ..........................................................................................................6

    C.    The Oath Under 35 U.S.C. §111 is Not a Condition of Patentability and
    Not a Defense to Patent Infringement .....................................................................7

    D.    Oaths for U.S. Patent Applications ..........................................................................7

    E.    Claims May Include Structure and Functional Language.......................................8

IV.   ARGUMENT ................................................................................................. 9

    A.    The Patents-in-Suit Are Not Invalid Due to the Declarations ..............................10

        1.    Fibar Cannot Challenge the USPTO's Procedural Acceptance of
        the Inventor's Declarations ....................................................................... 10

        2.    Karamelion Has Supplemental Declarations That Can Be Filed
        with the USPTO .......................................................................................... 11

        3.    The Original Declarations Are Not Appropriate for Judicial Notice
        Because They are the Source of Dispute Raised in Fibar's Motion
        to Dismiss and are Not an Indisputable Fact ........................................... 12

i

B.     Karamelion Sufficiently Pled Direct Infringement and Did Not Allege Induced Infringement ............................................................................................ 13

C.     The Asserted Claims Are Not Indefinite Because They are Not Mixed Apparatus/Method Claims and Properly Recite a Structure and the Structure's Capability ....................................................................................... 14

CONCLUSION ........................................................................................................... 17

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
543 F.3d 657 (Fed.Cir. 2008)................................................................. 7, 10, 11

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009)........................................................................ 5, 6, 13

*Autry v. Northwest Premium Servs., Inc.*,
144 F.3d 1037 (7th Cir. 1998) ................................................................. 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................... 5, 6, 13

*Commil USA, LLC v. Cisco Sys.*,
135 S.Ct. 1920 (2015) ........................................................................ 6

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed.Cir. 2018)............................................................... 6, 13

*GE Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ............................................................... 6, 12

*Graham v. John Deere*,
383 U.S. 1 (1966) ............................................................................. 7, 10

*Hennessy v. Penril Datacomm Networks*,
69 F.3d 1344 (7th Cir. 1995) ................................................................ 6, 7

*HTC Corp. v. IPCom GmbH & Co., KG*,
667 F.3d 1270 (Fed.Cir. 2012)............................................................ 9, 15, 16

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed.Cir. 2005)............................................................. 9, 15

*Jackson v. Ill. Bell Tel. Co.*,
2002 U.S. Dist. LEXIS 13186 (N.D.Ill. July 3, 2002)...................................... 5

*Johnson Safety, Inc. v. Voxx International Corp.*,
IPR2016-01074, Paper 33 (PTAB March 9, 2017)................................... 8, 11, 12

*Johnson Safety, Inc. v. Voxx Int'l Corp.*,
2017 U.S. Dist. LEXIS 60002 (C.D.Ca. April 17, 2017) ................................. 11

*Karamelion LLC v. Elexa Consumer Products, Inc.*,
Case No. 1:19-cv-6329 (Doc. #19) (N.D.Ill. Dec. 27, 2019)......................... 6, 14

*Lecat's Ventriloscope v. Mt Tool and Manufacturing*,
2018 WL 6067253 (N.D. Ill. 2018), ......................................................... 15

*Mastermine Software Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed.Cir. 2017).......................................................... passim

*McCormick v. City of Chi.*,
    230 F.3d 319 (7th Cir. 2000) ...................................................................... 5

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed.Cir. 2007) .................................................................... 5

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S.Ct. 2238 (2011) ................................................................................. 6

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed.Cir. 2011) .................................................................. 16

*Roberts v. Sears, Roebuck & Co.*,
    723 F.2d 1324 (7th Cir. 1983) .................................................................. 10

*Standard Havens Prods. v. Gencor Indus.*,
    897 F.2d 511 (Fed.Cir. 1990) .................................................................... 12

*TQ Delta, LLC v. 2WIRE, Inc.*,
    C.A. 13-cv-1835-RGA, 2017 U.S. Dist. LEXIS 206989 (D.Del. Dec. 18, 2017) .............. 9

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    2019 U.S. Dist. LEXIS 209589 (N.D.Ill. Dec. 5, 2019) ................................... 8

*Ultimate Pointer LLC v. Nintendo Co.*,
    816 F.3d 816 (Fed.Cir. 2016) ........................................................ 8, 14, 15, 16

*United States v. Jones*,
    29 F.3d 1549 (11th Cit. 1994) .................................................................... 7

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ...................................................................... 5

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed.Cir. 2017) .................................................................... 5

**Statutes**

35 U.S.C. §101 ............................................................................................. 7, 10

35 U.S.C. §102 ............................................................................................. 7, 10

35 U.S.C. §103 ............................................................................................. 7, 10

35 U.S.C. §111 (pre-AIA) ............................................................................. 7, 10

35 U.S.C. §112 ............................................................................................... 7, 8

35 U.S.C. §115 (post-AIA) ............................................................................... 11

35 U.S.C. §115 (pre-AIA) ........................................................................... 7, 8, 10

35 U.S.C. §133 ................................................................................................... 10

35 U.S.C. §25 ......................................................................................... 1, 7, 10

35 U.S.C. §251 ..................................................................................................... 7

35 U.S.C. §282 (pre-AIA) ................................................................................ 6, 7

iv

35 U.S.C. §371 ...................................................................................................................... 10

**Rules**

Fed.R.Civ.P. 12(b)(6) ............................................................................................................. 5

Fed.R.Evid. 201(b) ............................................................................................................. 6, 12

**Regulation**

37 C.F.R. § 1.139 ................................................................................................................... 10

37 C.F.R. § 1.67 (pre-AIA) ............................................................................................. passim

37 C.F.R. § 1.68 ................................................................................................................... 10

**Other**

Manual of Patent Examination Procedure § 603 (Ex. L) ...................................................... 11

Manual of Patent Examination Procedure § 603.01 (Ex. L) ................................................. 11

## TABLE OF EXHIBITS

Exhibit A          United States Patent No. 6,275,166

Exhibit B          United States Patent No. 6,873,245

Exhibit C          Notice of Missing Parts for U.S. Patent Application Serial No. 09/234,968 (U.S. Patent No. 6,275,166) dated February 10, 1999

Exhibit D          Completion of Filing Requirements for U.S. Patent Application Serial No. 09/234,968 (U.S. Patent No. 6,275,166) dated July 12, 1999

Exhibit E          Declaration for U.S. Patent Application Serial No. 09/234,968 (U.S. Patent No. 6,275,166) received July 15, 1999

Exhibit F          Assignment for U.S. Patent Application Serial No. 09/234,968 (U.S. Patent No. 6,275,166) received July 15, 1999

Exhibit G          Notice of Missing Parts for U.S. Patent Application Serial No. 09/929,834 (U.S. Patent No. 6,873,245) dated September 27, 2001

Exhibit H          Completion of Filing Requirements for U.S. Patent Application Serial No. 09/929,834 (U.S. Patent No. 6,873,245) dated November 26, 2001

Exhibit I          Declaration for U.S. Patent Application Serial No. 09/929,834 (U.S. Patent No. 6,873,245) received January 4, 2002

Exhibit J          Assignment for U.S. Patent Application Serial No. 09/929,834 (U.S. Patent No. 6,873,245) received January 4, 2002

Exhibit K          *Johnson Safety, Inc. v. Voxx International Corp.*, IPR2016-01074, Paper 33 (PTAB March 9, 2017)

Exhibit L          Manual of Patent Examining Procedure ("MPEP") §603 - Supplemental Oath or Declaration (Post-AIA and Pre-AIA), §603.01

Exhibit M          Supplemental Declarations for United States Patent No. 6,275,166

Exhibit N          Supplemental Declarations for United States Patent No. 6,873,245

## I.      SUMMARY OF THE ARGUMENT

Fibar USA LLC's ("Fibar" or "Defendant") motion to dismiss contends (i) that the inventor declarations submitted with the original patent applications are defective, (ii) that there are insufficient facts to support direct or indirect infringement of claim 1 of U.S. Patent No. 6,275,166 ("the '166 patent") and claim 1 of U.S. Patent No. 6,873,245 ("the '245 patent") (collectively "patent-in-suit"), and (iii) that claim 1 of each of the patents-in-suit is indefinite.  On February 10, 2020, Karamelion filed an Amended Complaint for Patent Infringement against Fibar dropping claim 1 of the '166 patent and asserting that Fibar directly infringed claims 16 and 17 of the '166 patent and claim 1 of the '245 patent.  (Doc. #36 at ¶¶18, 30).   Karamelion is not asserting claim 1 of the '166 patent against Fibar and therefore Fibar's motion with respect to this claim should be denied as there is no controversy.  Karamelion is instead asserting claims 16 and 17 of the '166 patent, which are not addressed in Fibar's motion to dismiss.

Fibar's assertion that the patents-in-suit are invalid because the inventor declarations allegedly do not comply with 35 U.S.C. §§25(b), 111, 115 and/or 37 C.F.R. § 1.68 is not a defense. The only conditions of patentability that can be raised as a defense are 35 U.S.C. §§101, 102, and 103.  The acceptance of the declarations by the United States Patent and Trademark Office ("USPTO") is a procedural act that cannot be challenged.   Regardless, Karamelion has supplemental inventor declarations that can be filed if necessary under 37 C.F.R. §1.67 (pre-AIA) thereby mooting the issue.  At a minimum, the challenged declarations are extrinsic evidence that are not proper for judicial notice because they are disputed documents and other extrinsic evidence rebut Fibar's arguments.

Fibar's contention that Karamelion failed to plead facts sufficient for direct infringement or indirect infringement misreads the complaint and misconstrues the claim language.  Karamelion only asserted direct infringement and therefore Fibar's indirect infringement argument is

irrelevant. Fibar's direct infringement argument misconstrues the claim language by contending that the claims are directed to a system claim. The Honorable Judge Edmond Chang previously rejected this same argument on a similar motion to dismiss.

Fibar's final argument that the claims are indefinite due to mixed apparatus and method limitations is incorrect and also a claim construction issue. Although a claim cannot claim both an apparatus and a method for using an apparatus, an apparatus claim can include functional language. The asserted claims of the patents-in-suit properly include functional language consistent with Federal Circuit precedent. As this is an invalidity assertion, Fibar again has the burden of proving this issue by clear and convincing evidence with all reasonable inferences drawn in Karamelion's favor. At the motion to dismiss phase of the case, Fibar cannot satisfy its burden to prove that the claims are invalid. The Court should therefore deny Fibar's motion to dismiss.

## II.     CONCISE STATEMENT OF THE FACTS

The '166 Patent is titled "RF Remote Appliance Control/Monitoring System" and issued on August 14, 2001, based on an application filed on January 19, 1999. (Ex. A at cover). The '245 patent issued on March 29, 2005, from a continuation-in-part of the application for the '166 patent. (Ex. B at cover). The patents-in-suit relate to controlling and monitoring distributed appliance systems, such as systems for controlling and monitoring HVAC, lighting, security, occupancy, and usage of distributed facilities. (Ex. A at col. 1:5-12; Ex. B at col. 1:12-16).

### A.     Problems Existed with Prior Art Distributed Appliance Systems

Control of distributed appliance systems in the prior art commonly used computer networks and business software. (Ex. A at col. 1:11-13; Ex. B at col. 1:17-19). A major difficulty with such systems was the expense of wiring inter-connections between elements of the system, particularly when there were additions or changes to be made in the system. (Ex. A at col. 1:14-18; Ex. B at col. 1:19-26). Prior art attempts to reduce the expense of the systems included using efficient

network products such as using a widely known Ethernet standard, using AC power wiring to transmit RF communications to remote controllers, and using a combination of wired and wireless communications. (Ex. A at col. 1:18-27; Ex. B at col. 1:19-26).

However, centralized wireless control systems for locally distributed appliances were not widely used mainly because systems that had a sufficient communication ranges were subject to regulations and licensing requirements that are prohibitively expensive. (Ex. A at col. 1:28-32; Ex. B at col. 1:27-36). Also, systems that are powerful enough to be used in widely distributed installations are unnecessarily expensive for smaller installations. (Ex. A at col. 1:32-34; Ex. B at col. 1:31-33). Wireless communications also had limited availability of RF carrier frequencies, and potential interference with other nearby systems that might be operating in similar frequencies. (Ex. A at col. 1:34-37; Ex. B at col. 1:33-36). Because of the continued deficiencies of the prior art solutions, there was a need for a wireless appliance control system that overcomes the disadvantages of the prior art. (Ex. A at col. 1:38-39; Ex. B at col. 1:52-53). The inventors developed an invention that "meets this need by providing a wireless configuration that uses a distributed array of low power (short range) wireless controllers that are also functional as relay units for communicating with a headend control computer at long range." (Ex. A at col. 1:42-46; *also* Ex. B at col. 1:56-60).

### B. The Claims of the Patents-in-Suit Are Directed to an Improved Apparatus for Use in Monitoring and Controlling Distributed Appliance Systems

Karamelion is asserting claim 16 and 17 of the '166 patent and claim 1 of the '245 patent. Claim 1 of the '245 patent, the only asserted claim challenged in the Motion to Dismiss, states:

1. An appliance controller for a distributed appliance system having a multiplicity of appliances, and a plurality of relay units, one of the relay units being the appliance controller and comprising:

(a) a low power satellite radio transceiver having a range being less than a distance to at least some of the appliances;

3

(b) an appliance interface for communicating with the at least one local appliance;

(c) a microcomputer connected between the satellite radio transceiver and the appliance interface and having first program instructions for controlling the satellite transceiver and second program instructions for directing communication between the satellite transceiver and the appliance interface;

(d) the first program instructions including detecting communications directed by another of the relay units relative to the same appliance controller, signaling receipt of the directed communications, and directing communications to the other of the relay units relative to the same appliance controller; and

(e) the second program instructions including detecting relay communications directed between the another of the relay units and a different relay unit, transmitting the relay communications, detecting a reply communication from the different relay unit, and transmitting the reply communication to the other of the relay units,

wherein at least some of the relay units communicate with others of the relay units by relay communications using at least two others of the relay units.

(Ex. B at col. 14:64 – col. 15:27).

Claim 1 of the '166 patent (which is not asserted) is similar to claim 1 of the '245 patent but addresses communication with a headend computer. (Ex. A at col. 9:37-67).

## C. The Acceptance of the Oaths/Declarations by the Examiner During the Prosecution Histories of the Patents-in-Suit

The application leading to the '166 Patent was filed on January 19, 1999. (Ex. A at cover). In a Notice to File Missing Parts of Application Filing Date Granted, the USPTO stated that the application was missing the oath or declaration. (Ex. C). In response to the Notice to File Missing Parts of Application Filing Date Granted, applicant submitted a declaration and a document under oath. (Exs. D, E, F). The signed declarations stated in relevant part that the signing individuals were the first inventors of the subject matter claimed in the application leading to the '166 patent and their residence. (Ex. E). The oath likewise stated that individuals were the inventors of the new and useful improvements disclosed in the applications leading to the '166 patent and their residences. (Ex. F). The USPTO accepted the declaration and oath.

The application leading to the '245 Patent was filed on August 14, 2001. (Ex. B). The

4

USPTO issued a Notice to File Missing Parts of Application Filing Date Granted stating that the oath or declaration was missing. (Ex. G). In response to the Notice to File Missing Parts of Application Filing Date Granted, applicant submitted another Declaration and a document under oath. (Ex. H, I, J). The USPTO again accepted the declaration and oath.

## III.    STATEMENT OF THE LAW

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007).

### A.    Standards for a Motion to Dismiss and for Pleading Infringement

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). All facts in the complaint are drawn in Karamelion's favor along with any reasonable inferences. *Id.*; *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed.Cir. 2017). A motion to dismiss will only be granted if it appears beyond doubt that the plaintiff can prove no set of facts entitling it to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993). Whether a complaint states a plausible claim for relief is a context-specific task that requires the Court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)

"[A] pleading must only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick v. City of Chi.*, 230 F.3d 319, 323-24 (7th Cir. 2000) (quotations and citations omitted). "Specific facts are not necessary; ....'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). On a motion to dismiss, the "Federal Rules of Civil Procedure dictate that matters outside the pleadings cannot be considered when deciding a Rule 12(b)(6) motion to dismiss." *Jackson v. Ill. Bell Tel. Co.*, 2002 U.S. Dist. LEXIS 13186, *5 (N.D.Ill. July 3, 2002). The Honorable Judge Chang recently ruled with respect to the same patents-in-suit that exhibits from the prosecution history

submitted by the defendant and not attached to the complaint are not properly considered in the motion to dismiss. *Karamelion LLC v. Elexa Consumer Products, Inc.*, Case No. 1:19-cv-6329 (N.D.Ill. Dec. 27, 2019) (Doc. #19) (J. Chang).

With respect to allegations of patent infringement, the Federal Circuit addressed the standard for pleading infringement reaffirming that it has never recognized a difference between pleading under old Form 18, Fed.R.Civ.P., and pleading under *Iqbal/Twombly* pleading standard. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 n.3 (Fed.Cir. 2018). The complaint in *Disc Disease* attached the asserted patents, which consisted of four independent claims, identified the accused products by name and attached photos of packaging, and alleged that the accused products meet "each and every element of at least one claim [of the asserted patents] either literally or equivalently." *Id.* at 1260. The Federal Circuit held that the complaint satisfied the *Iqbal/Twombly* standard. *Id.*

A patent is presumed valid and the burden of establishing invalidity of any patent claim by clear and convincing evidence rests on Defendant. 35 U.S.C. §282; *Microsoft Corp. v. i4i Ltd.*, 131 S.Ct. 2238, 2245 (2011); *Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920, 1929 (2015).

### B.      Judicial Notice

"A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (*quoting* Fed.R.Evid. 201(b) and *citing Hennessy v. Penril Datacomm Networks*, 69 F.3d 1344, 1354 (7th Cir. 1995)). "[T]he effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against [the person] as to the fact noticed." *Id.* at 1083 (*quoting United States v. Jones*, 29 F.3d

1549, 1553 (11th Cit. 1994)). "In order for a fact to be judicially noticed, indisputability is a prerequisite." *Hennessy*, 69 F.3d at 1354.

### C. The Oath Under 35 U.S.C. §111 is Not a Condition of Patentability and Not a Defense to Patent Infringement

Compliance with 35 U.S.C. §111 (or the alternative declaration under 35 U.S.C. §25) is not a condition of patentability and therefore not a defense to patent infringement. Section 282(2) authorizes an invalidity defense based "on any ground specified in part II of this title [35] as a condition for patentability." "A defense falling under this section thus has two prerequisites: it must fall within part II of title 35 and it must be a 'condition for patentability.'" *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed.Cir. 2008). Relying on Supreme Court precedent, the Federal Circuit unequivocally held that "[i]t has long been understood that the Patent Act sets out the conditions for patentability in three sections: sections 101, 102, and 103." *Id.* at 661; *also Graham v. John Deere*, 383 U.S. 1, 12 (1966) ("The [1952 Patent] Act sets out the conditions of patentability in three sections.***[35 U.S.C. §§101, 102, 103].***"). The Federal Circuit continued that "utility and eligibility, novelty, and nonobviousness are the ***only*** so-called conditions for patentability." *Aristocrat*, 543 F.3d at 661 (emphasis added). If a "condition of patentability" in §282(2) included sections other than §§101, 102, 103, then §282(3) listing defenses under 35 U.S.C. §112 and §251 would be redundant. *Id.* at 662. Therefore, "'condition[s] for patentability' relate only to defenses of invalidity for lack of utility and eligibility [§101], novelty [§102], and nonobviousness [§103], …," not §§25, 111, or any other section. *Id.*.

### D. Oaths for U.S. Patent Applications

The applications for the '166 patent and '245 patent were filed prior to September 16, 2012, and therefore the pre-AIA statute applies. Under 35 U.S.C. §111 (pre-AIA), a patent application shall include, in relevant part, an oath by the applicant as prescribed by 35 U.S.C. §115. For the

inventor's declaration, 35 U.S.C. §115 (pre-AIA) states that the "applicant shall make oath that he believes himself to be the original and first inventor of the process, machine, manufacture, or composition of matter, or improvement thereof, for which he solicits a patent; and shall state of what country he is a citizen." The oath "may be made before any person within the United States authorized by law to administer oaths, …." *Id.* The oath is valid if it complies with the laws of the state or country where made." *Id.* The USPTO regulations allow supplemental oaths to be filed to correct "any deficiencies or inaccuracies in the earlier-field oath or declaration." 37 C.F.R. §1.67 (pre-AIA); *Johnson Safety, Inc. v. Voxx International Corp.*, IPR2016-01074, Paper 33 at 4 (PTAB March 9, 2017) (Ex. K).

### E.     Claims May Include Structure and Functional Language

Although a claim cannot claim both an apparatus and a method for using an apparatus, an apparatus claim may include functional language. *Mastermine Software Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed.Cir. 2017); *Microprocessor Enhancement Corp. v Texas Instruments*, *Inc.*, 520 F.3d 1367, 1375 (Fed.Cir. 2008); *Ultimate Pointer LLC v. Nintendo Co.*, 816 F.3d 816, 826 (Fed.Cir. 2016). For example, functional language is explicitly authorized by statute through means-plus-function format. *Mastermine*, 874 F.3d at 131; *Microprocessor*, 520 F.3d at 1375 (*citing* 35 U.S.C. §112 ¶6). Functional language may also be used in an apparatus claim without using the means-plus-function format. *Mastermine*, 874 F.3d at 131; *Microprocessor*, 520 F.3d at 1375. Using active verbs, such as controlling and directing, as the functional language "represent permissible functional language used to describe the capabilities" of a component and does not render a claim indefinite. *Mastermine*, 874 F.3d at 1315-16; *Trading Techs. Int'l, Inc. v. IBG LLC*, 2019 U.S. Dist. LEXIS 209589, *25 - *26, *27-*28 (N.D.Ill. Dec. 5, 2019).

The problem with claiming mixed subject matter is the lack of clarity as to when there is infringement of the claim. *Microprocessor*, 520 F.3d at 1374. However, when a claim is directed

to an apparatus possessing a "recited structure and *capable* of performing the recited functions," it makes clear that the infringement occurs by making, using, offering to sell, and selling the claimed apparatus and is therefore definite.  *Mastermine*, 874 F.3d at 1315 (emphasis in original) (*citing Microprocessor*, 520 F.3d at 1375 and *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1277 (Fed.Cir. 2012)).

The holding of *IPXL Holdings* that a claim cannot claim both an apparatus and a method for using an apparatus is limited to two specific situations.  *Mastermine*, 874 F.3d at 1315.  First, system and apparatus claims are indefinite if they also claim activities performed by a user. *Mastermine*, 874 F.3d at 316.  Second, system and apparatus claims are indefinite if they use functional language that is not specifically tied to a structure but instead appears in isolation.  *Id.*

## IV.   ARGUMENT

Defendant's motion to dismiss should be denied.  First, the alleged deficiency of the inventor declarations is not a defense.  The declarations were accepted by the USPTO and Fibar has no statutory basis to challenge the acceptance.  Regardless, Karamelion has supplemental inventor declarations that can be filed if necessary under 37 C.F.R. §1.67 (pre-AIA) thereby mooting the issue.  At a minimum, the challenged declarations are extrinsic evidence that are not proper for judicial notice because they are disputed documents and other extrinsic evidence rebut Fibar's arguments.  Second, on pleading direct infringement, Karamelion complied with the requirements for pleading direct infringement of an apparatus claim by identifying the patents, the asserted claims, and specifying the products that are alleged to infringe.  At most, Fibar raises claim construction issues.  Finally, Fibar again raises claim construction issues when it contends that the claims are indefinite.  As explained below, the claims are proper apparatus claims.

## A.     The Patents-in-Suit Are Not Invalid Due to the Declarations

The Court should deny Fibar's motion with respect to the allegedly deficient declarations for several reasons.  First, Fibar's §§25, 111, and 115 and 37 C.F.R. § 1.68[1] arguments are not defenses to patent infringement because they are not conditions of patentability.  Second, if the issue is considered by the Court, Karamelion has supplemental declarations that can be appropriately filed to moot the issue.  Finally, the declarations should not be judicially noticed because there are disputed fact and additional relevant extrinsic evidence to consider.

### 1.     Fibar Cannot Challenge the USPTO's Procedural Acceptance of the Inventor's Declarations

Fibar incorrectly asserts that §111 is a "condition of patentability" that can be asserted as a defense to patent infringement under §282(b).  The Supreme Court, the Federal Circuit, and the Court of Appeals for the Seventh Circuit have held that the conditions of patentability are limited to §§101, 102, and 103.  *Graham*, 383 U.S. at 12; *Aristocrat*, 543 F.3d at 661; *Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1330-1331 (7th Cir. 1983).  Any other statutory section, *e.g.*, §§111 or 115, is **not** a condition of patentability and therefore cannot be raised as a defense.  *Aristocrat*, 543 F.3d at 662.[2]  Fibar did not cite to any litigation in which a defendant invalidated a patent under §§25, 111 or 115 or 37 C.F.R. § 1.68 because they are not defenses that can be asserted.  (*See* Doc. # 23 at 11-14).[3]  In this case, the USPTO accepted the declarations and Fibar cannot collaterally attack the USPTO's acceptance.  *Aristocrat*, 543 F.3d at 663 ("Once a patent

---

[1]  Defendant's argument under 35 U.S.C. § 25 and 37 C.F.R. § 1.68 are both based on invalidity under the same statute sections, 35 U.S.C. §§111 and 115 and are therefore the same arguments. (Doc. #23 at 12, 13).

[2] Fibar incorrectly contends that *Aristocrat* addressed whether the regulation 37 C.F.R. § 1.139 was a defense. (Doc. #23 at 11, n4).  However, the Federal Circuit actually overturned the district court's holding addressing statutory sections and held that 35 U.S.C. §§133 and 371(d) were not defenses.  *Aristocrat*, 543 F.3d at 662.

[3] Fibar cites to PTAB cases in which the USPTO rejected declarations.  For the patents-in-suit in this case, the USPTO accepted the declarations.

has issued, the procedural minutiae of prosecution have little relevance to the metes and bounds of the patentee's right to exclude."). Fibar admits this in its briefing. (Doc. #23 at 11 n. 4). The acceptance of the original declarations by the USPTO is a procedural act that cannot be challenged by Fibar, which is consistent with the Federal Circuit's refusal to allow a challenge to the USPTO reviving a patent application. *Aristocrat*, 543 F.3d at 663.

### 2. Karamelion Has Supplemental Declarations That Can be Filed with the USPTO

Although the accepted declarations cannot be challenged, Karamelion has supplemental declarations that can be filed in the USPTO to correct any alleged deficiency. (Exs. M, N). Under 37 C.F.R. §1.67 (pre-AIA), a supplemental declaration may be submitted to meet the requirements of 37 C.F.R. §1.67 "to correct any deficiencies or inaccuracies present in an earlier-filed inventor's oath or declaration." *Johnson Safety*, IPR2016-01074, Paper 33 at 4 (Ex. K). Correcting "any deficiencies" includes correcting deficient oath language. *Id.*; *see* MPEP § 603 (pre-AIA 37 C.F.R. §1.67) (Ex. L). Furthermore, the Manual of Patent Examination Procedures states that supplemental declarations that make no changes to the wording of the papers on file (*i.e.*, the patent application) "may be filed after allowance as a matter of right." MPEP § 603.01 (Ex. L). There is no statutory or regulatory time limit under 37 C.F.R. §1.67 (pre-AIA) for such a submission.[4]

The USPTO also accepts supplemental corrected declarations pursuant to 37 C.F.R. §1.67 long past the issuance of the patent. *Johnson Safety, Inc. v. Voxx Int'l Corp.*, 2017 U.S. Dist. LEXIS 60002, *15 (C.D.Ca. April 17, 2017). In *Johnson Safety*, the district court followed the decision of the Patent Trials & Appeals Board (PTAB) holding that an applicant may submit a supplemental oath to correct a deficiency in the original filed oath under 37 C.F.R. §1.67 (pre-

---

[4] Congress's amendment to 35 U.S.C. §115(h) (post-AIA) is also consistent with the pre-AIA procedure that any person submitting a declaration may "correct the statement at any time."

AIA). The USPTO public records show that the corrected declaration in the *Johnson Safety IPR* was filed fifteen years after the original declaration and 6 years after the patent was issued. (https://portal.uspto.gov/pair/PublicPair). If the Court find that the original declarations should be supplemented, Karamelion can file the supplemental declarations to moot Defendant's argument. (Exs. M, N).

### 3. The Original Declarations Are Not Appropriate for Judicial Notice Because They are the Source of Dispute Raised in Fibar's Motion to Dismiss and are Not an Indisputable Fact

The declarations submitted by Fibar are extrinsic evidence that should not be judicially noticed because they are the source of the factual dispute. "A judicially noticed fact must be one not subject to reasonable dispute in that it is… capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b)(2). The USPTO accepted the declarations and did not contend that they were deficient. Yet, the issue raised by Fibar is whether the declarations should have been accepted by the examiner. In other words, the document submitted for judicial notice are being questioned for their accuracy and therefore are not a source "whose accuracy cannot reasonably be questioned." *Id.* At most, the Court may take judicial notice that the document was submitted and accepted during the prosecution history but cannot rely on what it discloses when it is disputed. *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 514 n.3 (Fed.Cir. 1990).

Judicially noticing the declarations would also prevent Karamelion from introducing contrary evidence. *GE Capital*, 128 F.3d at 1083. At the very least, the existence of supplemental declarations and other oaths submitted by the inventors during the prosecution history[5] are

---

[5] Concurrently with the declarations, the applicants submitted oaths in the form of an assignment stating that the inventors "invented new and useful improvements disclosed in an application for United States Letters Patent titled RF REMOTE APPLIANCE CONTROL/ MONITORING SYSTEM, filed January 19, 1999, as application Serial No. 09/234,968." (Exs. F, J).

additional extrinsic evidence that raise factual disputes as to whether there is any validity issue. The Court should therefore not rule on this issue at the motion to dismiss phase.

### B. Karamelion Sufficiently Pled Direct Infringement and Did Not Allege Induced Infringement

Karamelion is no longer asserting claim 1 of the '166 patent and therefore Fibar's argument is only relevant to claim 1 of the '245 patent. Karamelion has stated a plausible claim for relief for direct infringement and gives Fibar fair notice of what the claim is and the ground upon which it rests. Fibar's argument is also moot because Karamelion has already served its infringement contentions providing further information on the asserted infringement.

Karamelion's amended complaint alleges that Fibar infringes claim 16 and 17 of the '166 patent and claim 1 of the '245 patent by making, using, selling, offering for sale, and/or perform a method using an appliance controller. (Doc. #36 at ¶¶18-19, 30-31). The complaint identifies the following Fibar products as being accused instrumentalities: Fibaro RGBW Controller 2, Walli Dimmer, Walli Outlets, Walli Roller Shutter, Walli Switch, Walli N Line, Dimmer 2, Flood Sensor, RGBW Controller, Smart Implant, Universal Binary Sensor and Wall Plugs along with identifying webpages with specifications for the products. (Doc. #36 at ¶¶18, 30). Karamelion then explained with evidentiary citations how the accused instrumentalities satisfy every element of the asserted claims. (*Id.* at ¶¶19-25, 31-36). The complaint therefore satisfies the *Iqbal/Twombly* standard. *Disc Disease*, 888 F.3d at 1260.

Fibar's argument is based on misreading the complaint and claims. Karamelion asserts a claim of direct infringement for which knowledge is not required. *See Disc Disease*, 888 F.3d at 1260. Fibar's contention that Karamelion did not assert knowledge to establish induced infringement is irrelevant because Karamelion did not assert induced infringement. Rather, Fibar contends that Karamelion must have asserted induced infringement because the claimed appliance

controllers have a "plurality of relay units," which misreads the claims. The claims are for *an* appliance controller that is also *a* relay unit, not a plurality of relay units. Claim 1 of the '245 patent states: "*An appliance controller* for a distributed appliance system having a multiplicity of appliances, and a plurality of relay units, *one* of the relay units *being the appliance controller and comprising*:…." (Ex. A at col. 14:64-67). Claim 1 of the '245 patent is an apparatus claim, not a system claim nor method claim. Karamelion therefore identified accused instrumentalities that are a relay unit that are also an appliance controller. At most, Fibar has raised claim construction issues that are not appropriately decided at the motion to dismiss phase of the case. *Karamelion LLC*, Case No. 1:19-cv-6329 (N.D.Ill. Dec. 27, 2019) (Doc. #19) (J. Chang).

### C. The Asserted Claims Are Not Indefinite Because They are Not Mixed Apparatus/Method Claims and Properly Recite a Structure and the Structure's Capability

Fibar's contention that the asserted claims improperly simultaneously claim an apparatus and the method of using the apparatus is a claim construction dispute and incorrectly states the law. As explained in *Microprocessor*, an apparatus claim limited to a "recited structure and *capable* of performing the recited functions" is not indefinite. 520 F.3d at 1375; *Mastermine*, 874 F.3d at 1315; *Ultimate Pointer*, 816 F.3d at 826.

Fibar incorrectly contends that limitations (a)-(c) of claim 1 of the '245 patent[6] are apparatus limitations, whereas the (d) first program instructions and (e) second program instructions are method limitations. All terms are written using the same style: structure followed by capability using active verbs (*e.g.*, having, "for communicating," "for controlling," "detecting," "signaling," "directing"). As explained by the Federal Circuit, using such "active verbs" "represent[s] permissible functional language used to describe capabilities of [a component]," in

---

[6] The argument with respect to the '245 patent is equally applicable to claim 1 of the '166 patent.

this case the first and second program instructions. *Mastermine*, 874 F.3d at 1315.

Like in *Microprocessor*, *HTC*, *Ultimate Pointer*, and *Mastermine*, the claim at issue here is definite because it "merely claim[s] that the [apparatus] possess[es] the recited structure [which is] capable of performing the recited functions." *Mastermine*, 874 F.3d at 1316 (*internal quotes removed*). In limitations (d) and (e), the functions are tied to the specific program instructions. The phrasing used in the limitations follows the phrasing used in *Microprocessor*, which the Federal Circuit held was directed to an apparatus and not indefinite. *Microprocessor*, 520 F.3d at 1371-72 ("…the pipelined processor further including at least one write pipeline stage for writing the result(s) of each instruction to specified destination(s); at least one of the instructions including a means for specifying writing said condition code with a condition.code result…."). Fibar further misreads the claims by contending that (d) and (e) must be performed in order. Limitation (d) relates to program instructions handling communications from either the headend computer or the relay unit to the particular appliance controller, whereas limitation (e) relates to program instructions handling communications to or from the relay units and intended for the headend computer or another relay unit. These are not steps that must be performed in any order but instead describe the capability of the specific program instructions.

Claim 1 of the '245 patent (and, although it is not being longer asserted, Claim 1 of the '166 patent) are distinguishable from *IPXL Holdings* and *Rembrandt* for the reasons set forth in *Mastermine*. In *IPXL Holdings*, the claim "claim[ed] activities performed by the user." *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed.Cir. 2005)[7]; *Mastermine*, 874 F.3d at 1624-25. Fibar does not contend that the claim requires a user-performed action. (*See* Doc.#23

---

[7] *Lecat's Ventriloscope v. Mt Tool and Manufacturing*, 2018 WL 6067253 (N.D. Ill. 2018), cited by Defendant, also involved a human-performed function and therefore likewise distinguishable.

at 22-23). In fact, Fibar acknowledges that the limitations are the capabilities of the controller: "Claim limitations 1(d-e) state the steps the controller must take to send a message." (*Id.* at 23). *Mastermine*, 874 F.3d at 1315-16 ("Though claim 8 includes active verbs—presents, receives, and generates—these verbs represent ***permissible functional language used to describe capabilities of the 'reporting module.'***") (emphasis added); *Ultimate Pointer*, 816 F.3d at 827 ("Unlike *IPXL* and similar cases, the claims at issue here make clear that the 'generating data' limitation ***reflects the capability of that structure rather than the activities of the user***.")(emphasis added); *Microprocessor*, 520 F.3d at 1375 ("Claim 7 of the '593 patent, however, is ***clearly limited to a pipelined processor possessing the recited structure and capable of performing the recited functions***, and is thus not indefinite under *IPXL Holdings*.") (emphasis added). Because no user action is required and the functional language only describes a structure's capabilities in the claimed apparatus, like in *Mastermine*, there is no confusion over when infringement occurs: "infringement occurs when one makes, uses, offers to sell, or sells the claimed" apparatus. 874 F.3d at 1613; *HTC*, 667 F.3d at 1277.

Rembrandt Data Techs., LP v. AOL, LLC, 641 F.3d 1331 (Fed.Cir. 2011), is also distinguishable because the functional language appeared in isolation and was not tied to the claimed structure. *Mastermine*, 874 F.3d at 1316. The claim in *Rembrandt* recited apparatus elements but included the last element of "transmitting the trellis encoded frames" that had no reference to any recited apparatus element. 641 F.3d at 1339. The patent owner contended that there was "an obvious administrative or typographical error not subject to reasonable debate" so that the court should "insert 'transmitter section for' into the final element" of the claim. *Id.* at 1339. The Federal Circuit said adding such language was improper. *Id.* However, in this case, there is no defect in the claim because the language sought to be added in *Rembrandt* is already in

the claim. The asserted claims already tie the functional language to the structure of the first and second program instructions in the microprocessor. *Mastermine*, 874 F.3d at 1316 ("unlike the claims in *Rembrandt*, the functional language here does not appear in isolation, but rather, is specifically tied to the structure: the reporting module installed within the CRM software application."). As explained above, even Fibar admits that the functional language does not appear in isolation and is in fact tied to the instructions in the controller.

The claims are therefore not indefinite and Fibar at most raises claim construction issues that are not raised at the motion to dismiss phase of the case.

## CONCLUSION

For the foregoing reasons, Karamelion LLC respectfully requests that this Court deny Defendant Fibar's Motion to Dismiss Under Rule 12(b)(6) (Doc. #23). Karamelion respectfully requests oral argument on the motion.


Dated: March 13, 2020                                 Respectfully Submitted,

                                                      */s/ David R. Bennett*
                                                      David R. Bennett
                                                      Direction IP Law
                                                      P.O. Box 14184
                                                      Chicago, IL 60614-0184
                                                      (312) 291-1667
                                                      dbennett@directionip.com

                                                      *Attorneys for Plaintiff Karamelion LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 13, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ David R. Bennett* 
David R. Bennett
